UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| HISTORIC EASTERN PEQUOTS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 12-58 (EGS) |
| v. | ) | |
| | ) | |
| KENNETH SALAZAR, Secretary of the Interior, and LARRY ECHOHAWK, Assistant Secretary for Indian Affairs, United States DEPARTMENT OF THE INTERIOR | ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION

Pending before the Court is a motion to dismiss or, in the alternative, to transfer, filed by defendants Kenneth Salazar, Secretary of the Interior, and Larry Echohawk, Assistant Secretary for Indian Affairs.[1] Upon consideration of the motion, the response and reply thereto, a brief filed by the State of Connecticut as *Amicus Curiae*, the entire record, and for the reasons stated below, defendants' motion to dismiss is **GRANTED**.

## I.   BACKGROUND

In 1978, the Eastern Pequot Indians of Connecticut filed a letter of intent seeking federal acknowledgment as an Indian

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Del Laveradure was substituted for Larry Echohawk when Mr. Laverdure was appointed as Acting Assistant Secretary-Indian Affairs between the time defendants' motion to dismiss and defendants' reply brief was filed.

tribe pursuant to 25 C.F.R. Part 83.  *See* 65 Fed. Reg. 17299 (Mar. 31, 2000).[2]  On June 24, 2002, the Assistant Secretary issued a Final Determination ("FD") concluding that the "historical Eastern Pequot tribe, represented by two petitioners, the Eastern Pequot Indians of Connecticut and the Paucatuck Eastern Pequot Indians of Connecticut," satisfied the regulatory criteria for federal acknowledgment.  *See* 67 Fed. Reg. 44,234-02 (Jul. 1, 2002).  A request for reconsideration of that decision was filed with the Interior Board of Indian Appeals ("IBIA") within 90 days by the State of Connecticut and the towns of North Stonington, Ledyard and Preston.  *In re Fed. Acknowledgment of the Historical E. Pequot Tribe*, 41 IBIA 1; 67 Fed. Reg. 44,240 (Jul. 1, 2002).  On May 12, 2005, the IBIA issued an Order Vacating and Remanding the determination.  41 IBIA 1.  On October 14, 2005, the IBIA issued and published a Reconsidered Final Decision ("RFD") in the Federal Register denying federal recognition to the tribe.  70 Fed. Reg. 60,099-

---

[2] A petitioner seeking federal tribal acknowledgment must produce evidence satisfying seven mandatory criteria under the regulations: (a) identification as an American Indian entity on a substantially continuous basis since 1900; (b) existence as a distinct community from historical times to the present; (c) existence of political influence or authority from historical times to the present; (d) a governing document including membership criteria; (e) membership is composed of individuals who descend from a historical Indian tribe; (f) membership is composed of persons who are not members of an acknowledged tribe; and (g) the petitioner's tribal status was not terminated by Congress.  25 C.F.R. § 83.7.

01 (Oct. 14, 2005).  The RFD stated that it was "final and
effective upon the date of publication."  *Id.*

On January 12, 2006, the IBIA received a request from the
"Historic Eastern Pequot Tribe" for reconsideration of the RFD.
42 IBIA 133.  The IBIA dismissed the request for lack of
jurisdiction.  *Id.*  Specifically, the IBIA explained that it
only has jurisdiction to review timely requests for
reconsideration of a Final Determination, not a Reconsidered
Final Determination.  In this case, the Final Determination was
issued on July 1, 2002.  The Reconsidered Final Decision, issued
October 14, 2005, was final and effective upon its publication.

Plaintiff filed the initial complaint in this action on
January 13, 2012.  ECF No. 1.  At that time, plaintiff was
proceeding as the "Eastern Pequot Tribal Nation."  The Court
subsequently received a letter dated January 20, 2012 from James
A. Cunha, Jr., Tribal Chairman of the Eastern Pequot Tribal
Nation.  ECF No. 2.  Mr. Cunha explained that the complaint had
not been reviewed or authorized by the Eastern Pequot Tribal
Nation and he requested information as to how to withdraw the
complaint.

On February 3, 2013, the Court directed plaintiff to
respond to Mr. Cunha's letter.  On February 18, 2012, plaintiff
moved to substitute the "Historic Eastern Pequots" for the
Eastern Pequot Tribal Nation.  ECF No. 3.  The Court granted

3

that motion on February 22, 2012, and directed plaintiff to file an amended complaint.  The Amended Complaint was filed on March 7, 2012.  ECF No. 5.

On April 11, 2012, defendants moved to dismiss or, in the alternative, to transfer venue.  ECF No. 8.  Defendants argue that the Court lacks subject matter jurisdiction over plaintiff's claims because they fall outside of the applicable statutes of limitations.  Defendant also argues that Counts VIII and IX fail to state a claim.  The motion is now ripe for the Court's decision.

## II.  STANDARD OF REVIEW

### a. Rule 12(b)(1)

Federal district courts are courts of limited jurisdiction and "possess only that power conferred by [the] Constitution and [by] statute." *Logan v. Dep't of Veterans Affairs,* 357 F. Supp. 2d 149, 152 (D.D.C. 2004) (*quoting Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994)). "There is a presumption against federal court jurisdiction and the burden is on the party asserting the jurisdiction, the plaintiff in this case, to establish that the Court has subject matter jurisdiction over the action." *Id.* at 153 (citing *McNutt v. Gen. Motors Acceptance Corp. of Ind.,* 298 U.S. 178, 182-83 (1936)).

In assessing whether a complaint sufficiently alleges
subject matter jurisdiction, the Court accepts as true the
allegations of the complaint, *see Ashcroft v. Iqbal,* 556 U.S.
662, 678 (2009), and liberally construes the pleadings such that
the plaintiff benefits from all inferences derived from the
facts alleged, *Barr v. Clinton,* 370 F.3d 1196, 1199 (D.C. Cir.
2004).  However, "[a] pleading that offers labels and
conclusions or a formulaic recitation of the elements of a cause
of action will not do.  Nor does a complaint suffice if it
tenders naked assertions devoid of further factual enhancement."
*Iqbal,* 556 U.S. at 678 (internal citations, quotation marks and
brackets omitted).  When the inquiry focuses on the Court's
power to hear the claim, "the Court may give the plaintiff's
factual allegations closer scrutiny and may consider materials
outside the pleadings."  *Logan*, 357 F. Supp. 2d at 153 (citing
Fed. R. Civ. P. 12(b)(1); *Herbert v. Nat'l Academy of Scis.,* 974
F.2d 192, 197 (D.C. Cir. 1992); *Grand Lodge of Fraternal Order
of Police v. Ashcroft,* 185 F. Supp. 2d 9, 13 (D.D.C. 2001)).

**b. Rule 12(b)(6)**

A motion to dismiss under Federal Rule of Civil Procedure
12(b)(6) tests the legal sufficiency of a complaint.  *Browning
v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  A complaint
must contain "a short and plain statement of the claim showing
that the pleader is entitled to relief, in order to give the

defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted). While detailed factual allegations are not necessary, plaintiff must plead enough facts "to raise a right to relief above the speculative level." *Id.*

When ruling on a Rule 12(b)(6) motion, the Court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002). The Court must construe the complaint liberally in plaintiff's favor and grant plaintiff the benefit of all reasonable inferences deriving from the complaint. *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). However, the Court must not accept plaintiff's inferences that are "unsupported by the facts set out in the complaint." *Id.* "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## III. DISCUSSION

### a. Standing

As an initial matter, it does not appear that plaintiff has standing to bring its claims. Lack of standing is a defect in subject matter jurisdiction. *See Haase v. Sessions,* 835 F.2d

902, 906 (D.C. Cir. 1987).  To establish Article III standing at the pleading stage, a plaintiff bears the burden of pleading that: "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant[s]; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.,* 528 U.S. 167, 180–81 (2000) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992)).  "This triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence." *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 103–04 (1998).

Plaintiff's claims face a fundamental threshold problem: it is entirely unclear whether the plaintiff entity the "Historic Eastern Pequots" was affected in any way whatsoever by the RFD. Plaintiff initially brought its claims as the "Eastern Pequot Tribal Nation" but substituted the "Historic Eastern Pequots" as plaintiff after the Chief of the Eastern Pequot Tribal Nation disclaimed the lawsuit.  In its motion to substitute, counsel for the Historic Eastern Pequots set forth a detailed history of

intra-tribal disputes regarding federal recognition but those
allegations shed no light on whether the "Historic Eastern
Pequots" is a separate entity or can stand in the shoes of the
entities subject to the RFD.  ECF No. 3.  Defendants argue,
predominantly in a footnote, that the Historic Eastern Pequots
lack standing to challenge the RFD because plaintiff's
relationship to the Eastern Pequot Tribal Nation is unclear.
Defs.' Mot. at 2, n.1-3 (citing *Lujan*, 504 U.S. at 560-61).  The
State of Connecticut, participating as *Amicus Curiae*, suggests
that the lawsuit appears to arise out of an intra-tribal dispute
over the appropriate response of the tribe to the RFD.  *See*
Brief of the State of Conn. at 8 (discussing allegations
regarding the Tribal Council's reluctance to challenge the
denial of the RFD).  In its opposition, plaintiff wholly fails
to address the standing issue.  On reply, defendants argue,
again predominantly in a footnote, that plaintiff failed to
adequately respond to the arguments in the motion to dismiss
regarding standing and that the Court could dismiss the
complaint on that ground alone.  Defs.' Reply at 1, n.3.

At this stage in the litigation, the record is far from
clear as to whether the "Historic Eastern Pequots" is the same
entity as any of the entities who were affected by the RFD.  The
RFD states that the "Eastern Pequot Indians of Connecticut (EP)
and the Paucatuck Eastern Pequot Indians of Connecticut (PEP) do

not satisfy all seven mandatory criteria for acknowledgement in 25 C.F.R. 83.7." *See* 70 Fed. Reg. 60,099-01.  The RFD also states that the FD, issued in 2002, had determined that the EP and the PEP would be acknowledged to be one group, the "Historical Eastern Pequot Tribe." *See* 67 Fed. Reg. 44234-02. The various names used in the RFD raise several issues, none of which have been adequately addressed by plaintiff.  Is the plaintiff, "Historic Eastern Pequots," the same entity as the "Historical Eastern Pequot Tribe" mentioned in the FD?  The record is very unclear.  Plaintiff has further complicated the issue by referring to itself (or possibly other distinct tribes) in the complaint by various names.  For example, the complaint makes allegations as to the "Historic Eastern Pequots," (Compl. ¶ 1), the "Historic Eastern Pequot Tribe," (Compl. ¶ 2), the "Eastern Pequot Tribe," (*Id.*), the "Eastern Pequots of Connecticut," (Compl. ¶ 9), and the "Eastern Pequot Indians of Connecticut" (Compl. ¶ 13).  Plaintiff does not adequately address its relationship to any of these entities.  Nor does plaintiff address the fact that the Eastern Pequot Tribal Nation has expressly disclaimed this lawsuit, causing plaintiff to re-file the complaint under the name "Historic Eastern Pequots." Ultimately, however, plaintiff bears the burden of establishing that it has standing to invoke the Court's subject matter

jurisdiction, and plaintiff has failed to do so here.[3]
Accordingly, the Court finds that plaintiff has failed to meet
its burden of pleading that it has standing, and the Court
therefore lacks subject matter jurisdiction over this case.  *See*
*Lujan*, 504 U.S. at 561.[4]

### b. Counts I through VII

In Counts I through VII of the amended complaint, plaintiff
challenges the RFD issued by the IBIA and argues that the
decision violated the Administrative Procedure Act and
plaintiff's constitutional rights.  In response, defendants
argue that the Court lacks subject matter jurisdiction over
Counts I through VII because those claims were not brought
within the applicable statute of limitations.

Plaintiff alleges that this Court has jurisdiction pursuant
to the Administrative Procedure Act, 5 U.S.C. §§ 702-706

---

[3] The Court emphasizes, however, that today's decision relates
only to the current plaintiff in this matter, the "Historic
Eastern Pequots" and not to any of the other entities referred
to in the complaint or the RFD, who are not parties to this
action.

[4] As discussed herein, the Court also finds that it lacks subject
matter jurisdiction over the action on other grounds in addition
to standing.  *See* Sections II(b) and (c), *infra*.  Because there
is not a required "sequencing of jurisdictional issues," the
Court may dismiss this case on any available non-merits,
jurisdictional basis.  *Ruhrgas AG v. Marathon Oil. Co.*, 526 U.S.
574, 575 (1999) (holding that although subject matter
jurisdiction must precede a determination on the merits,
district courts may choose among jurisdictional, threshold
grounds for dismissal); *see Grocery Mfrs. Ass'n v. EPA*, 693 F.3d
169, 179 (D.C. Cir. 2012).

("APA").  Am. Compl. ¶ 4.[5]  The APA provides a waiver of
sovereign immunity, stating that "[a] person suffering legal
wrong because of agency action, or adversely affected or
aggrieved by agency action within the meaning of a relevant
statute, is entitled to judicial review thereof."  5 U.S.C. §
702.  This waiver of sovereign immunity is limited, however, by
the applicable statute of limitations.  Specifically, under 28
U.S.C. § 2401(a) "every civil action commenced against the
United States shall be barred unless the complaint is filed
within six years after the right of action first accrues."
Limitations and conditions upon which the federal government
consents to be sued will be strictly construed in favor of the
sovereign.  *Al-Aulaqi v. Obama*, 727 F. Supp. 2d 1, 41 (D.D.C.
2010) (citing *Soriano v. United States*, 352 U.S. 270, 276
(1957)); *see Block v. North Dakota*, 461 U.S. 273, 287 (1983)
(holding that when Congress attaches conditions to legislation

---

[5] As defendants note, plaintiff also alleges that jurisdiction is
proper under 28 U.S.C. § 1331, but that statute does not provide
a waiver of sovereign immunity. *See Walton v. Fed. Bureau of
Prisons*, 533 F. Supp. 2d 107, 114 (D.D.C. 2008) (determining
that 28 U.S.C. § 1331 does not waive the federal government's
sovereign immunity).  Accordingly, subject matter cannot be
based on section 1331.  Plaintiff also alleges that jurisdiction
is proper under 28 U.S.C. § 1337 because it relates to
"Congressional acts regulating commerce with Indian tribes."
Compl. ¶ 4.  Counts I through VII relate to the decision of the
IBIA, as opposed to any acts of Congress, and jurisdiction under
Section 1337 is not proper.  In any event, plaintiff did not
challenge defendants' characterization of the jurisdictional
question as arising under the APA, and therefore the Court will
analyze jurisdiction under the APA.

waiving the sovereign immunity of the United States, "those conditions must be strictly observed, and exceptions thereto are not to be lightly implied"). Accordingly, the Court has subject matter jurisdiction over plaintiff's claim only if it was brought within the six-year statute of limitations.

Defendant argues that the statute of limitations in this action expired on October 14, 2011, six years after the publication of the RFD on October 14, 2005. The Court agrees. A cause of action against an administrative agency first accrues as soon as the plaintiff may institute and maintain an action in court. *See Impro Prods., Inc. v. Block*, 722 F.2d 845, 850 (D.C. Cir. 1983); *Spannus v. Dep't of Justice*, 824 F.2d 52, 56 (D.C. Cir. 1987) ("A cause of action . . . 'first accrues,' within the meaning of § 2401(a), as soon as . . . the person challenging the agency action can institute and maintain a suit in court."). In Counts I through VII of the amended complaint, plaintiff challenges the RFD issued by the Associate Deputy Secretary, notice of which was published in the Federal Register on October 14, 2005. The notice of the RFD expressly stated that it was "final and effective upon the date of publication of this notice, pursuant to 25 C.F.R. § 83.11(h)(3)." *See* 70 Fed. Reg. 60,099-01 (Oct. 14, 2005). 25 C.F.R. Section 83.11(h)(3) provides that "[i]f a determination is reconsidered by the Assistant Secretary because of action by the Board remanding a

12

decision or because the Secretary has requested reconsideration, the reconsidered determination shall be final and effective upon publication of the notice of this reconsidered determination in the Federal Register."

Critically, the regulations do not provide for further reconsideration of a Reconsidered Final Determination. Plaintiff's request for reconsideration, submitted to the IBIA on January 12, 2006, therefore did not act to toll the statute of limitations for the filing of an action challenging the RFD because an agency's refusal to reconsider a final agency action does not create a new final agency action. *See Impro. Prods.*, 722 F.3d at 851 (citing *Provisioners Frozen Express, Inc. v. ICC*, 536 F.2d 1303, 1305 (9th Cir. 1976)). As the IBIA explained, it only has jurisdiction to review requests for reconsideration of Final Determinations, not *Reconsidered* Final Determinations. 42 IBIA 133. Thus, because plaintiff's request for reconsideration of the Reconsidered Final Determination had no effect on the finality of the RFD, plaintiff was required to bring this action within six years of the issuance of the RFD, or by October 14, 2011. Plaintiff's initial complaint, which was not filed until January 13, 2012, exceeded that time period by three months.

i.  The Statute of Limitations Should Not Be Tolled

Plaintiff argues that the statute of limitations should be tolled for several reasons, none of which have merit.  Plaintiff first argues that it is protected by the Non-Intercourse Act, 25 U.S.C. § 177, which restricts the alienation of Indian land without Congressional approval.  The Act provides that "[n]o purchase, grant, lease, or other conveyance of lands, or of any title or claim thereto, from any Indian nation or tribe of Indians, shall be of any validity in law or equity, unless the same be made by treaty or convention entered into pursuant to the Constitution."  Plaintiff appears to seek to re-characterize its claims as arising under the Non-Intercourse Act.

As an initial matter, however, the complaint does not allege any specific claims under the Non-Intercourse Act, and only makes passing references to the Act.[6]  None of the claims

---

[6] For example, in the factual allegations, plaintiff argues that if the RFD is permitted to stand, plaintiff will be deprived of the "special trust relationship" mandated by the Act.  Compl. ¶ 17 (Factual Allegations).  Plaintiff also alleges that the RFD is "violative and contrary to the legislative intent and policies as set forth in the Non-Intercourse Act . . . ." Compl. ¶ 38 (Count III: Defendants' Reversal of the Final Decision was Arbitrary and Capricious).  Plaintiff also alleges that "the State [of Connecticut] effectuated the illegal sale of the reservation land for the mining interests in 1872 in contravention of the 1790 Non-Intercourse Act. . . . Neither the State as actual trustee, nor the Federal government as implied trustee, acted in the appropriate fiduciary capacity to protect the tribal interests . . . ."  Compl. ¶ 55 (Count VI: "Failure to Estopp the State from Opposing the Tribe's Federal Recognition").  Finally, plaintiff alleges that "[a]t all times

arise under the Non-Intercourse Act, nor has plaintiff alleged that jurisdiction would be proper under the Act.  Rather, plaintiff appears to argue that the denial of tribal status in the RFD was an arbitrary and capricious agency action under the APA, and that it had various negative effects, including that it is contrary to the legislative intent of the Non-Intercourse Act.

Even if plaintiff had alleged that the defendants had violated the Non-Intercourse Act, however, plaintiff has failed to establish a prima facie case under the Act.  In order to do so, a plaintiff must show, among other things, that it is an Indian tribe. *Golden Hill Paugussett Tribe v. Weicker*, 39 F.3d 51, 56 (2d Cir. 1994).  As plaintiffs contend, recognition by the IBIA is not the sole means of establishing tribal status for purposes of the Act. *Joint Tribal Council of the Passamaquoddy Tribe v. Morton*, 528 F.2d 370 (1st Cir. 1975) ("There is nothing in the Act to suggest that 'tribe' is to be read to exclude a bona fide tribe not otherwise federally recognized.").  Courts may, however, defer resolution of tribal status to the IBIA. *BGA, LLC v. Ulster County, N.Y.*, 2010 WL 3338958, at *9

---

the Defendants have known or should have known of the illegal status of the land.  The illegal original sale by the legislature in 1872 is in direct contravention of the Non-Intercourse Act of 1790 without congressional approval. . . . The failure of the Defendants to intercede with these transactions amount to complicity."  Compl. ¶ 96 (Count IX: Tortious Interference with Business Expectancy).

(N.D.N.Y. Aug. 24, 2010) (citing *Golden Hill Paugussett Tribe*,
39 F.3d at 59).  Deferral is particularly warranted where a
plaintiff has already invoked the IBIA's authority.  *See Golden
Hill Paugussett Tribe*, 39 F.3d at 60 (declining to decide
whether plaintiff was an Indian tribe when plaintiff had a
pending application for recognition with the IBIA).  Here,
plaintiff has expressly been found not to be a tribe by the
IBIA.[7]  Unlike the case on which plaintiff principally relies,
*Joint Tribal Council of the Passamaquoddy Tribe*, the parties
have not stipulated that plaintiff is a tribe.  *See* 528 F.2d at
370.  Under these circumstances, the Court declines to invade
the province of the IBIA to determine whether plaintiff or any
related entities are tribes, particularly when the IBIA has
already spoken on the issue.  In any event, plaintiff has failed
to cite any case law supporting its argument that the Non-
Intercourse Act would toll the statute of limitations in this
case.[8]  Accordingly, the Court finds that plaintiff's references

---

[7] There is, again, significant confusion as to the status of the
current plaintiff "Historic Eastern Pequots" and therefore
whether that entity is, in fact, one of the entities that was
determined not to be a tribe by the October 14, 2005
Reconsidered Final Determination.  The Court finds, however,
that even if plaintiff is correct that it can stand in the shoes
of the entities determined not to be a tribe in the RFD, the
Non-Intercourse Act would not apply to toll the statute of
limitations for the reasons explained herein.
[8] The cases cited by plaintiff involved only state claims.  *See
Mohegan Tribe v. State of Connecticut*, 638 F.2d 612, 615 (2d
Cir. 1980) (stating that state law statutes of limitation have

to the Non-Intercourse Act do not toll the statute of limitations for challenging the RFD.

Plaintiff also argues that the statute of limitations should be tolled because the complaint alleges "ongoing breaches of trust."  In their reply, defendants characterize this argument as arising under the continuing claims doctrine.  The continuing claims doctrine "applies when the government owes a continuing duty to the plaintiffs . . . [such that] [e]ach time the government breaches the duty, a new cause of action arises." *Boling v. United States*, 220 F.3d 1365, 1373-74 (Fed. Cir. 2000) (noting that the doctrine does not apply where a single governmental action causes a series of deleterious effects).  In this case, however, the statute of limitations under Section 2401(a) is jurisdictional and cannot be tolled "by the application of judicially recognized exceptions . . . such as waiver, estoppel, equitable tolling, fraudulent concealment, the discovery rule, and the continuing violations doctrine." *Terry v. U.S. Small Bus. Admin.*, 699 F. Supp. 2d 49, 54 (D.D.C. 2010) (quoting *Felter v. Norton*, 412 F. Supp. 2d 118, 122 (D.D.C. 2006); *see also W. Va. Highlands Conservancy v. Johnson*, 540 F. Supp. 2d 125, 143 (D.D.C. 2008) (EPA's continued failure to file

---

consistently been rejected as a defense to the Act).  Because this claim arises under the federal government's limited waiver of sovereign immunity under the APA, it is not at all clear that the six-year statute of limitations under the APA would be tolled by a claim under the Non-Intercourse Act.

report after publication deadline as required by regulations did not toll statute of limitations because of jurisdictional nature of the limitations period).  Here, Section 2401(a) is jurisdictional and required plaintiff to file its claim within six years of the RFD.  Because plaintiff's claim was filed three months late, this court lacks subject matter jurisdiction over plaintiff's claims.[9]

Accordingly, for the reasons explained above, Counts I through VII of the amended complaint were not timely filed and the Court lacks subject matter jurisdiction to review them. Counts I through VII will therefore be **DISMISSED**.

### c. Counts VIII and IX

Count VIII alleges that defendants have "tortiously harmed plaintiff's efforts to engage in lawful commerce" by failing to properly regulate gaming among Indian tribes in the State of Connecticut.  Count VIII also purports to allege a violation of the Sherman Antitrust Act.  Count IX alleges that defendants' negligent regulation of gaming has tortiously interfered with plaintiff's business expectancy.  Defendants argue that Counts

---

[9] For substantially the same reasons, the Court also finds that plaintiff's arguments regarding fraudulent concealment and equitable estoppel cannot toll the statute of limitations set forth in Section 2401.  *See Terry*, 699 F. Supp. 2d at 54.  Even if there were no such jurisdictional bar to asserting these defenses, plaintiff has failed to establish that any facts were fraudulently concealed from it, particularly in light of the publication of the RFD in the Federal Register, and plaintiff has failed to establish a basis for equitable estoppel.

VIII and IX should be dismissed for lack of subject matter jurisdiction and because they fail to state a claim.

As an initial matter, plaintiff does not make clear the jurisdictional basis of its tort claims in Counts VIII and IX. In the jurisdictional allegations in the complaint, plaintiff alleges that jurisdiction is proper under 5. U.S.C. § 702, the Administrative Procedure Act, and 28 U.S.C. § 1337, which states that "district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce. . . ."[10]  In the complaint, plaintiff alleges that jurisdiction is proper under Section 1337 because the case relates to "congressional acts regulating commerce with Indian tribes."  These allegations were made generally, however, and plaintiff does not identify the specific jurisdictional basis for Counts VIII and IX.

Defendants argue that because plaintiff's claims sound in tort and seek money damages, jurisdiction is not proper under the APA.  *See* 5 U.S.C. § 702 (providing relief "other than money damages"); *Benoit v. U.S. Dep't of Agric.*, 608 F.3d 17, 20 (D.C. Cir. 2010) (holding that suits for money damages are not within the limited waiver of sovereign immunity found in the APA).  The Court agrees.  Furthermore, plaintiff does not specifically

---

[10] As noted above, plaintiff also alleges jurisdiction is proper under 28 U.S.C. 1331, which does not provide a waiver of sovereign immunity.

respond to this argument in its opposition to the motion to
dismiss.  Rather, plaintiff's opposition alleges that the
applicable statutes of limitation should be tolled, an argument
that fails for the reasons explained above.  Because plaintiff
failed to respond to defendants' argument that the APA does not
apply at all to Counts VIII and IX, the Court will deem the
argument to be conceded.  *See Hopkins v. Women's Div., Gen. Bd.
of Global Ministries*, 238 F. Supp. 2d 174, 178 (D.D.C. 2002)
(citing *FDIC v. Bender*, 127 F.3d 58, 67-68 (D.C. Cir. 1997))
("It is well understood in this Circuit that when a plaintiff
files an opposition to a motion to dismiss addressing only
certain arguments raised by the defendant, a court may treat
those arguments that the plaintiff failed to address as
conceded.").[11]

Plaintiff also failed to respond to defendants' alternative
argument under the Federal Tort Claims Act, 28 U.S.C. §§ 2679,
et seq. ("FTCA").  Even though plaintiff did not allege the FTCA

---

[11] Moreover, even if the APA did apply, the allegations in Counts
VIII and IX refer to events that allegedly occurred more than
six years prior to the filing of the complaint.  *See* Amend.
Compl. ¶ 45, 80-81 (alleging in Count VIII that after the
federal recognition of the Mohegan tribe in 1996, the "Pequot-
Mohegan Fund and its enabling agreements" became an unlawful
restraint of trade" in violation of the Sherman Antitrust Act);
¶ 92 (discussing in Count IX a 1997 management contract with
Trump enterprises regarding engaging in federal recognition
efforts).  Even if plaintiff had properly pled that subject
matter jurisdiction existed under the APA, its claims would far
exceed the six-year statute of limitations.

as a basis for jurisdiction over its tort claims, defendants argue that that jurisdiction would not be proper under the FTCA because plaintiff has failed to allege that its complaint was timely filed or that plaintiff exhausted its administrative remedies under the FTCA.  The FTCA permits the recovery of money damages from the government for claims sounding in tort under limited circumstances.  Specifically, claims under the FTCA are "forever barred unless . . . presented in writing to the appropriate federal agency within two years after such claim accrues." *Id.*  Defendants contend that because plaintiff did not plead that it had exhausted its administrative remedies as to the torts alleged in Counts VIII and IX, the claims should be dismissed for lack of subject matter jurisdiction.  *See McNeil v. United States*, 508 U.S. 106, 113 (1993) (affirming dismissal for lack of subject matter jurisdiction where the petitioner filed his FTCA claim before presenting his claim to the appropriate federal agency); *Upshaw v. United States*, 669 F. Supp. 2d 32, 45 (D.D.C. 2009) (dismissing for lack of subject matter jurisdiction where plaintiff failed to plead that he presented his claim to the appropriate federal agency).  Plaintiff failed to respond to this argument and the Court deems it to be conceded. *See Hopkins*, 238 F. Supp. 2d at 178.  Accordingly, the Court finds that plaintiff has conceded the issue of exhaustion under the FTCA and the Court lacks subject

matter jurisdiction over the claims to the extent they seek relief under the FTCA.

Plaintiff's remaining jurisdictional allegation is also insufficient to establish that this Court has subject matter jurisdiction over this case.  Plaintiff alleges generally that subject matter jurisdiction is appropriate over the entire case under 28 U.S.C. § 1337, which provides that federal district courts will have jurisdiction over proceedings arising from acts of Congress.  The statute does not, however, contain an express waiver of sovereign immunity, *see* 28 U.S.C. § 1337, and plaintiff has failed to allege how a waiver might exist in this case.  Plaintiff bears the burden, however, of establishing by a preponderance of the evidence that the Court possesses jurisdiction over its case.  *Roum v. Bush*, 461 F. Supp. 2d 40, 45 (D.D.C. 2006).  This is particularly important in actions involving agencies of the government or employees of the government acting in their official capacities, because they are immune from suit unless that immunity has been expressly waived. *Id.* (citing *Albrecht v. Comm. on Empl. Benefits of Fed. Reserve Empl. Benefits Sys.*, 357 F.3d 62, 67 (D.C. Cir. 2004) and *Clark v. Library of Cong.*, 750 F. 2d 89, 102-04 (D.C. Cir. 1984)). Here, because plaintiff has not set forth any basis for a waiver of sovereign immunity under 28 U.S.C. § 1337, the Court finds

that plaintiff has not established its burden of establishing that the Court has jurisdiction under that statute.[12]

Finally, plaintiff has not alleged that any of the other statutes cited in Counts VIII and IX grant a waiver of sovereign immunity.  For example, in Count VIII, plaintiff alleges that defendants violated the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. § 2701.  Plaintiff does not allege, however, that the IGRA provides a waiver of sovereign immunity or a private right of action against the federal government or its employees. Similarly, plaintiff does not allege that the Sherman Act, 15 U.S.C. § 1, et seq., exposes the United States to liability, nor does it appear to do so.  *Sea-Land Serv., Inc. v. Alaska R.R.*, 659 F.2d 243, 245 (D.C. Cir. 1981) ("The Sherman Act, we conclude, does not expose United States instrumentalities to liability, whether legal or equitable in character, for conduct alleged to violate antitrust constraints.").  Accordingly, plaintiff has failed to carry its burden of establishing subject matter jurisdiction by a preponderance of the evidence, and the Court finds that it lacks subject matter jurisdiction over Counts VIII and IX.

---

[12] Indeed, it appears unlikely that plaintiff could establish a waiver of sovereign immunity under 28 U.S.C. § 1337.  The statute is similar to that of 28 U.S.C. § 1331, which has been held not to grant a waiver of sovereign immunity.  Like Section 1331, Section 1337 addresses where certain causes of action may be brought, not who may be a party to those cases.

Accordingly, the Court will **DISMISS** Counts VIII and IX for lack of subject matter jurisdiction.

## IV.   CONCLUSION

For the foregoing reasons, defendants' Motion to Dismiss is **GRANTED**.   Because the Court's decision dismisses the case, the Court will **DENY** as moot defendants' alternative motion to transfer the case to the District of Connecticut.   An appropriate Order accompanies this Memorandum Opinion.

**Signed:**       **Emmet G. Sullivan**
            **United States District Judge**
            **March 31, 2013**